UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARGARET E. HINTON,

                    Plaintiff,

      -against-

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

                    Defendant.
---------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
16-cv-1735 (ADS)

FILED
CLERK
1/12/2018 11:38 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**Law Offices of Harry J. Binder and Charles E. Binder, P.C.**
*Attorneys for the Plaintiff*
60 East 42nd Street
Suite 520
New York, NY 10165
      By:    Charles E. Binder, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Arthur Swerdloff, Assistant United States Attorney
                Melanie Dyani Hendry, Assistant United States Attorney

**SPATT, District Judge**:

      The Plaintiff Margaret E. Hinton (the "Plaintiff" or the "claimant") commenced this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill (the "Defendant" or the "Commissioner"), the acting commissioner of the Social Security Administration (the "Administration") at the time of filing, that she is ineligible to receive Social Security disability insurance benefits.

      The Court notes that the Plaintiff originally named Carolyn W. Colvin as the Defendant in this action, but by operation of law, the present Acting Commissioner, Nancy A. Berryhill is

1

"automatically substituted as a party." FED. R. CIV. P. 25(d); *see also* 45 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. Although the ALJ found that the Plaintiff was disabled as of August 3, 2014, the Plaintiff asks this Court to find that the ALJ erred in failing to find that she was disabled before that date. For the reasons that follow, the Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I. BACKGROUND

### A. The Relevant Facts

While the Plaintiff applied for disability benefits based on a combination of mental and physical impairments, the Plaintiff does not dispute the ALJ's findings related to her physical conditions. Therefore, the Court will only address those facts that are related to the Plaintiff's mental impairments.

**1. The Plaintiff's Testimony**

The Plaintiff was 47 years old at the time of her alleged onset. The Plaintiff lives with her husband and one of their adult daughters. She has a high school diploma and took some college classes. She last worked in December 2011, as a dispatch supervisor for United Parcel Service.

The Plaintiff drives about once a week, and her daughter usually drives her to medical appointments. The Plaintiff's husband handles all of their finances. The Plaintiff bathes herself, and makes simple meals. However, she only goes shopping with her daughter, and her daughter does most of the cooking, laundry, and household cleaning. The Plaintiff asserted that if she

spends more than 30 minutes at the grocery store, she has a panic attack. Her only hobby is watching television. She has one friend with whom she communicates on Facebook.

The Plaintiff testified that her depression was "really bad" at the time, and has affected her ability to function, sleep without medication, and eat. She has panic attacks at least five times a day, and they last for fifteen to forty-five minutes. She cannot concentrate long enough to follow instructions, and feels overwhelmed "all the time."

### 2. The Relevant Medical Evidence

#### a. Pederson-Krag Center

On February 9, 2012, the Plaintiff was admitted to the Pederson-Krag Center for outpatient mental health treatment. On February 14, 2012, Dr. Yuan-Fang Chen evaluated the Plaintiff. The Plaintiff had fair eye contact; an anxious mood with congruent affect; slow speech; and impaired insight and judgment. Dr. Chen diagnosed major depressive disorder and assessed a global assessment of functioning ("GAF") of 45. She was seen again on February 29, 2012, but did not respond to phone calls or letters after that date. She was discharged from the program on March 21, 2012.

#### b. Dr. Renae Ferguson, the Plaintiff's Treating Physician

Dr. Renae Ferguson ("Dr. Ferguson"), who is a psychiatrist, began treating the Plaintiff on September 13, 2012. The Plaintiff informed Dr. Ferguson that she had been hospitalized twice earlier in the year for two attempted suicides. The Plaintiff described symptoms of insomnia, guilt, fatigue, feelings of hopelessness and helplessness, weight gain, feelings of worthlessness, and transient suicidal ideation. She also reported worrying about "everything." Dr. Ferguson diagnosed the Plaintiff with major depressive disorder, recurrent, and severe, without psychotic

3

features. The Plaintiff's GAF score was 55. Dr. Ferguson prescribed Trazodone, Klonopin, and Viibryd.

During follow-up examinations in October 2012, and January 2013, the Plaintiff told Dr. Ferguson that she was feeling better due to medication. On October 11, 2012, Dr. Ferguson noted that the Plaintiff had a brighter affect; good insight and judgment; and no thought disorder. On January 9, 2013, Dr. Ferguson assessed that the Plaintiff had a calm affect, good insight and judgment, and no thought disorder.

On February 5, 2013, Dr. Ferguson completed a medical questionnaire. She said that she had treated the Plaintiff every one to three months since first seeing her in September. The Plaintiff's symptoms at the time consisted of depressed mood, anhedonia (inability to feel pleasure), hopelessness, worthlessness, decreased concentration and energy, and suicidal ideations. The Plaintiff was taking Vibrydd, Trazadone, and Klonopin. At the time, Dr. Ferguson stated that she expected the Plaintiff's condition to last one year. She described the Plaintiff's attitude, appearance, and behavior as friendly, cooperative, well-groomed, and calm; said that she had spontaneous speech with a normal volume, rate, and pattern; and that she did not have thought or perception issues. The Plaintiff's mood and affect was "better" with treatment, but still depressed and tired. The plaintiff's orientation, memory, and information were within normal limits. Her cognition was grossly intact. Her insight and judgment were good. Dr. Ferguson stated that she was unable to evaluate the Plaintiff's ability to function in a work setting, ability to adapt, or her ability to interact socially. She assessed that the Plaintiff did not have any limitations regarding understanding and memory; and that the Plaintiff had some limitations, "maybe", regarding sustained concentration and persistence because the Plaintiff was so overwhelmed at home and had financial issues.

4

On March 10, 2013, the Plaintiff said that multiple problems in her family were causing her stress. The Plaintiff again noted that she was feeling better with medication. Dr. Ferguson's diagnosis remained unchanged. She noted that the Plaintiff was well-groomed, oriented, had good insight and judgment, displayed a calm affect, and did not have thought disorder.

On August 21, 2013, the Plaintiff complained that she was experiencing more frequent panic attacks, and that certain medication was keeping her up all night. The Plaintiff further stated that she had been twitching, and was experiencing feelings of depression, anhedonia, hopelessness, and poor appetite. A mental status exam revealed that the Plaintiff was tremulous yet oriented; her cognition was grossly intact; she had a good rate and rhythm of speech although it was monotone; calm affect; no thought disorder; and had good insight and judgment. The Plaintiff said that she was feeling "terrible."

On July 10, 2014, the Plaintiff stated that she was experiencing agoraphobia (fear of social interaction), anhedonia, hopelessness, and helplessness. She noted that a change to Zoloft had helped her anxiety and panic attacks. Dr. Ferguson again observed her to be tremulous. The Plaintiff said that she felt "doom and gloom all the time now;" that she kept the apartment a mess to avoid visitors; refused to shower so that she would not have to go out; and would shop in the dark. Her mental status examination was the same as on August 21, 2013. Dr. Ferguson specifically noted that the Plaintiff had a "calm affect even though at one point, she said she was having a panic attack." (R. at 331). The Plaintiff's August 7, 2014 visit contained the same verbatim mental status exam. The Plaintiff apparently told Dr. Ferguson on that date that she was forgetful or blocking out chunks of time. However, she said that Xanax was helping her go outside.

On November 21, 2014, Dr. Ferguson completed a Mental Impairment Questionnaire. She noted that she had seen the Plaintiff once a month since September of 2012. Her diagnosis was

that the Plaintiff suffered from major depressive disorder, recurrent without psychotic features, and rule out panic disorder with agoraphobia. At the time, the Plaintiff was taking Zoloft, Buspar, Trazadone, Xanax, and Propranolol. Dr. Ferguson expected that the Plaintiff's diagnoses and limitations would last at least 12 months. Dr. Ferguson noted that the Plaintiff displayed a depressed mood; persistent or generalized anxiety; anhedonia; feelings of guilt, worthlessness, hopelessness, disappointment, and being overwhelmed. The Plaintiff had motor tension, but displayed decreased energy and appetite. As to her capacity for attention, Dr. Ferguson noted that the Plaintiff had difficulty thinking or concentrating; was easily distracted; and had poor immediate and recent memory. Finally, she noted that the Plaintiff experiences recurrent panic attacks and bouts of insomnia. While the Plaintiff did not have a low I.Q. or reduced intellectual functioning, Dr. Ferguson stated that she experiences episodes of decompensation or deterioration in a work-like setting which causes her to withdraw. Those periods were a result of her anxiety and avoidance behavior.

As to the Plaintiff's limitations, Dr. Ferguson remarked that she was markedly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; sustain ordinary routine without supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; interact appropriately with the public; maintain socially appropriate behavior without withdrawing; respond appropriately to workplace changes; be aware of hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; set realistic goals; and, make plans

independently. This meant that the Plaintiff's symptoms were expected to interfere with her abilities to perform those mental activities for more than two-thirds of an eight-hour workday.

### c. Dr. R. Lopez., State Agency Psychological Consultant

On May 6, 2013, Dr. R. Lopez, a state agency psychological consultant, completed a Psychiatric Review Technique form for the Administration. In it, Dr. Lopez stated that the Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. He further opined that she was capable of following supervision; relating appropriately to coworkers; and performing substantial gainful activity.

## B. The Relevant Procedural History

On January 3, 2013, the Plaintiff filed an application for Social Security Disability benefits. She alleged that her disability began on December 6, 2011. Her application was denied, and she requested a hearing before an administrative law judge.

On December 2, 2014, the Plaintiff appeared, with counsel, before Administrative Law Judge Jacqueline Haber Lamkay (the "ALJ").

On December 12, 2014, the ALJ issued a written decision in which she found that that the Plaintiff was disabled as of August 8, 2014, but not before that date. Specifically, the ALJ found that at all times since her onset, the Plaintiff has suffered from the severe impairments of lumbar degenerative disc disease; osteoarthritis of the right knee status-post meniscectomy; depression; anxiety; and panic attacks. Despite those severe impairments, the ALJ found that the Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.F. § 404.1567(a), except that the Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, and crouch; must avoid concentrated exposure

7

to extreme cold and hazards such as dangerous moving machinery and unprotected heights; is limited to occupations that can be performed using a cane for ambulation; is limited to simple, routine, and repetitive tasks in a low stress work setting defined as not requiring an assembly line pace with only occasional decision-making required and can only handle occasional changes in the work setting; can handle no more than occasional interactions with the public, co-workers, and supervisors; and would need a brief, one to two-minute changes of position every one-half hour. The ALJ found that with this RFC, the Plaintiff could not perform her past relevant work as a shipping supervisor; insurance claims processor; fast food worker; or cashier. With the assistance of the testifying vocational expert, the ALJ found that there was a significant number of jobs that the Plaintiff could have performed before August 8, 2014. However, as of August 8, 2014, due to the Plaintiff's age, there were not any jobs that existed in significant numbers in the national economy that the Plaintiff could perform. The ALJ therefore determined that the Plaintiff was eligible for Social Security disability benefits as of August 8, 2014.

The Plaintiff asked the Appeals Council to review the ALJ's decision.

On February 11, 2016, the Appeals Council denied the Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

On April 11, 2016, the Plaintiff filed the instant complaint.

## II. DISCUSSION

### A. The Applicable Law

While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when the ALJ adjudicated plaintiff's

claim); *see also Michael Barca, Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:16-CV-187, 2017 WL 3396416, at *8 (D. Vt. Aug. 8, 2017) (applying the regulations in effect when the plaintiff filed his application); *Alvarez v. Comm'r of Soc. Sec.*, No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing *Lowry*, 474 F. App'x at 805 n.2));

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed

9

impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa,* 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa,* 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work." that the claimant could perform, taking into account, *inter alia,* the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77.

**B. The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo.*" *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.* " *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (holding that an ALJ's decision may be affirmed where there is substantial evidence for both sides)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

## C. Application to the Facts

Although the ALJ found that the Plaintiff was disabled, the Plaintiff contends that the ALJ erred. Specifically, she states that the ALJ erred because she should have been found disabled as of December 6, 2011, instead of August 3, 2014.

The Plaintiff asks the Court to find that the ALJ erred in applying the law and that her decision is not supported by substantial evidence. Specifically, the Plaintiff contends that the ALJ

11

erred in failing to properly apply the treating physician rule; that her RFC assessment is not supported by substantial evidence; and that the ALJ erred in evaluating the Plaintiff's credibility. The Commissioner opposes each of these points.

**1. As to Whether the ALJ Properly Applied the Treating Physician Rule and Determined the Plaintiff's RFC**

As stated above, the ALJ found that despite her severe impairments, the Plaintiff possessed the RFC to perform sedentary work with numerous limitations listed above. In coming to this conclusion, the ALJ relied, in part, on the medical opinion of the Plaintiff's treating physician, Dr. Ferguson. The ALJ afforded great weight to Dr. Ferguson's opinion. He did not give any reasons for affording Dr. Ferguson's opinion less than controlling weight. The Court finds that this was not error.

Under 20 C.F.R. § 404.1527(c) ALJs are required to weigh and evaluate "every medical opinion." When assigning weight to a medical opinion, ALJs consider the following factors: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; the length of treatment relationship and the frequency of examination; supportability; consistency; specialization; and "other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Where an ALJ declines to give controlling weight to a treating physician's opinion, she must provide "good reasons" for doing so, and must consider the above factors in determining the weight to afford to the opinion.

12

20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

While he did not ascribe controlling weight to Dr. Ferguson's medical opinion, the ALJ did bestow great weight on her opinion. In reaching his RFC determination, he noted that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Further, while he assigned only limited weight to Dr. Lopez's opinion, he did not assign "no weight" to it, and therefore utilized it in reaching his RFC determination. As he stated at the conclusion of his opinion, "the above [RFC] assessment is supported by the consultative examination, the treatment record from New York Pain Consultants and psychiatrist Dr. Ferguson." (R. at 30). Therefore, the ALJ gave good reasons for assigning great weight to the treating physician's opinion.

As to the Plaintiff's credibility, the ALJ noted that the Plaintiff was laid off in December 2011. An ALJ is permitted to consider a Plaintiff's work history. *See* 20 C.F.R. § 404.1529 (stating that the Administration will consider, *inter alia*, daily activities and medical history). The Plaintiff told an orthopedist on March 14, 2013 that she was able to cook, do laundry, shop, shower, bathe, and dress herself. The Plaintiff told Dr. Ferguson that she even cares for her husband, who is home-bound as a result of illness. These activities of daily living further supported the ALJ's RFC determination, as well as his decision to afford less than controlling weight to Dr. Ferguson's opinion. *Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013) ("[T]he ALJ's determination that [the plaintiff] could perform light work is supported by [the doctor]'s assessment of mild

limitations for prolonged sitting, standing, and walking, and direction that Lewis should avoid heavy lifting, and carrying. It is further supported by evidence in the record regarding Lewis's daily activity." (internal citations to the record and quotation marks omitted)); *Cichocki*, 729 F.3d at 178 (finding that the ALJ properly relied on the claimant's reported daily activities, including walking her dogs and cleaning, which were consistent with the capacity to perform light work); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (observing that the claimant's varied activities, including childcare, vacuuming, dishwashing, occasional driving, and using the computer, indicated that the claimant's allegations of disabling limitations were not fully credible).

The Plaintiff's credibility was further undermined by Dr. Ferguson's own treatment notes. On multiple dates, she noted that the Plaintiff had good insight and judgment; that her cognition was grossly intact; she displayed no thought disorder; and had a calm affect even when the Plaintiff claimed to be experiencing panic attacks. Of importance, in her assessment on February 5, 2013, she noted that the Plaintiff's orientation, memory, and information were within normal limits. In addition, the Plaintiff continually told Dr. Ferguson that the medication made her feel better. Therefore, Dr. Ferguson's treatment notes undermined her opinion and supported the ALJ's RFC determination.

Courts have consistently held that an ALJ is entitled to discount a treating physician's opinion where it is not fully supported by the physician's treatment notes. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Cichocki*, 534 F. App'x at 75 (holding that the ALJ was not required to give controlling weight to treating physician's medical opinion where the treatment notes contradicted that opinion); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (holding that ALJ

14

did not need to acquire a medical source statement from the treating physician when the ALJ had all of the treatment notes from the Plaintiff's treating physicians).

Taking all of these factors into account, the ALJ assessed an RFC that was less restrictive than Dr. Ferguson found. Determining a claimant's RFC is the sole province of an ALJ. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). While an RFC determination is, to a certain extent, a medical determination, *see Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010), the ultimate RFC determination is left to the ALJ, 20 C.F.R. § 404.1546(c).

Consequently, the ALJ did not commit error in assigning an RFC to the Plaintiff that did not precisely align with any doctor's RFC assessment. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that the Commissioner will "assess [a claimant's] residual functional capacity *based on all the relevant evidence* in [the claimant's] case record." (italics added)).

Therefore, the ALJ did not err when he assigned great weight to the treating physician's opinion, and his RFC determination was supported by substantial evidence. Accordingly, the Plaintiff's motion for a judgment on the pleadings based on those issues is denied.

15

### 2. As to Whether the ALJ Properly Evaluated the Plaintiff's Credibility

The Plaintiff also contends that the ALJ failed to properly evaluate her credibility because he summarily found that her complaints were not credible using boilerplate language. The Court finds that the ALJ properly evaluated the Plaintiff's credibility.

"It must be emphasized that 'it is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses and to set forth clearly its findings which form the basis for its decision.'" *Saviano v. Chater*, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997), *aff'd,* 152 F.3d 920 (2d Cir. 1998) (Spatt, J.) (quoting *Stupakevich v. Chater,* 907 F. Supp. 632, 637 (E.D.N.Y. 1995)); *see also Aponte v. Sec'y, Dep't of Health and Human Serv.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (internal quotation and editing marks and citation omitted)).

The plaintiff must bolster complaints of pain by demonstrating, through medical findings, that an underlying condition does exist and that it would be reasonably expected to produce the symptomatology alleged. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b); 416.929(b); Social Security Ruling ("SSR") 88–13; *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir. 1983). The ALJ found that there was an underlying condition, but did not believe that the condition was as severe as the Plaintiff claims.

If the claimant's symptoms indicate a more serious problem than is established by the medical evidence, other factors such as the claimant's daily activities and the location, duration, frequency, and intensity of the pain should be considered. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 88–13. As stated above, the medical evidence supported the ALJ's finding that the Plaintiff's condition is not as severe as she claims. *See Alcantara v. Astrue,* 667

F. Supp. 2d 262, 276 (S.D.N.Y. 2009) (ALJ must take subjective complaints into account only "to the extent that they are consistent with objective medical evidence").

As the ALJ noted, the Plaintiff was "laid off" in December 2011, and the medical evidence did not fully support her testimony about the frequency and duration of daily panic attacks. Indeed, the Plaintiff's own treating physician noted that the Plaintiff displayed a calm demeanor despite her claim that she was experiencing a panic attack during an examination. (R. at 331). Furthermore, as discussed above, her reported activities of daily living belied her claims relating to the persistence and intensity of her impairments. Therefore, the ALJ had reasons to doubt the Plaintiff's credibility. The Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, the Plaintiff's motion for a judgment on the pleadings based on the ALJ's evaluation of the Plaintiff's credibility is denied.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety; and the Commissioner's motion for a judgment on the pleadings dismissing the complaint pursuant to Rule 12(c) is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.


SO ORDERED:
Dated: Central Islip, New York
January 12, 2018

                ___/s/ Arthur D. Spatt___
                ARTHUR D. SPATT
                United States District Judge